UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTIAN REIMER STUKENBROCK,<br><br>    Defendant. | Case No.  5:15-cr-00034 EJD (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH SUBPOENA**<br><br>[Re:  Dkt. 31] |

Defendant Christian Reimer Stukenbrock was indicted on 9 counts of wire fraud.  He allegedly deceived one George Fiegl into giving him over $20 million for investment purposes and then diverted approximately half of those funds for his own personal use and benefit.

After obtaining leave of court, Stukenbrock served Fiegl with a subpoena containing three document requests:   (1) Fiegl's tax returns from 2005 through 2012; (2) corporate tax returns for Fiegl's company, Adema Technologies (Adema) from 2005 through 2008; and (3) "[a]ny documents concerning the Internal Revenue Service's investigation/inquiry into Mr. Fiegl's payment, or underpayment or nonpayment, of taxes in connection with the sale of Adema.  This request includes, but is not limited to, any correspondence, whether written or electronic, between Mr. Fiegl and the IRS, as well as any documents produced by Mr. Fiegl to the IRS in connection

with its investigation/inquiry." (Dkt. 33-1, Ubhaus Decl., Ex. A).[1]  With respect to the requested tax returns, Stukenbrock advises that, at this time, he seeks only federal returns.

Fiegl now moves to quash the subpoena, arguing that defendant seeks irrelevant and privileged information and that the subpoena lacks sufficient specificity.  Defendant opposes the motion, and has submitted to the court, on an ex parte basis, a supporting declaration from his attorney.  That declaration, which details Stukenbrock's investigation and anticipated trial strategies, has been sealed.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, this court grants the motion to quash as to the IRS investigation/inquiry, but denies the motion as to the requested tax returns.

Fed. R. Crim. P. 17(c) governs the issuance of subpoenas duces tecum in federal criminal cases and provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).  "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." Id.  "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

A Rule 17 subpoena duces tecum "was not intended to provide a means of discovery for criminal cases." United States v. Nixon, 94 S. Ct. 3090, 3103 (1974).  Rather, "its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." Id.  "Consistent with that limited purpose," a party seeking leave to issue a subpoena must show "'(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" United

---

[1] Although the subpoena was sealed by the court, Fiegl publicly filed it in support of his motion to quash, and defendant has not asked that the document be sealed or removed from the public record.

States v. Rajaratnam, 753 F. Supp.2d 317, 320 (S.D.N.Y. 2011) (quoting Nixon, 94 S. Ct. at 3103). "In other words, under the test adopted by the Supreme Court in *Nixon*, the proponent of a subpoena returnable before trial 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" Id. (quoting Nixon, 94 S. Ct. at 3103). On a motion to quash, a court must revisit the Nixon factors in determining whether compliance with a subpoena will be unreasonable or oppressive. The decision whether to enforce or quash a subpoena lies within the court's discretion and will not be disturbed unless clearly arbitrary or without support in the record. Nixon, 94 S. Ct. at 3104.

### A. Relevance

In assessing relevance, the court must determine whether the requested material "has any tendency to make a fact more or less probable than it would be without the evidence" and whether that "fact is of consequence in determining the action." Fed. R. Evid. 401; United States v. Libby, 432 F. Supp.2d 26, 31 (D.D.C. 2006). Fiegl argues that the requested documents can have no bearing on the charges against Stukenbrock. Having reviewed defense counsel's ex parte declaration, this court finds that the requested tax returns are relevant under Fed. R. Evid. 401, but that Stukenbrock has not met the relevance standard with respect to documents concerning an IRS investigation/inquiry. Accordingly, the motion to quash is granted as to the third document request. The remainder of this order addresses only the tax returns.

### B. Admissibility

Once the court determines that the subpoenaed materials are relevant, it must consider whether they would be admissible. "This inquiry is largely governed by the Federal Rules of Evidence." Libby, 432 F. Supp.2d at 31 (citing Fed. R. Evid. 401-415, 801-807). "Admittedly, it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied." Id.

Fiegl argues that the subpoena cannot be upheld based on a stated need for impeachment evidence. See Nixon, 94 S. Ct. at 3104 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). Even if the materials would be

3

admissible for impeachment, Fiegl contends that the court should first review the materials *in camera* and disclose them only if and when they are ripe for impeachment purposes. See United States v. Reyes, 239 F.R.D. 591, 601 (N.D. Cal. 2006) (observing that "where a defendant has identified evidence that would be admissible for impeachment but not otherwise, several courts have ordered the items produced for *in camera* inspection so that the court may review the material and disclose it, if ever, when it becomes ripe for impeachment."). This court concludes that the requested tax returns are arguably admissible under the Federal Rules of Evidence. Moreover, Stukenbrock has identified valid potential evidentiary use of the requested materials over and above whatever impeachment value they might have.

### C. Specificity

Subpoenas must be specific because those that request broad categories of documents often signify an impermissible fishing expedition. See, e.g., United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) (concluding that the district court properly quashed a subpoena that sought entire arson investigation files rather than specific documents); Reyes, 239 F.R.D. at 605-06 (quashing a subpoena that sought "[a]ll documents relating to or evidencing" various policies and practices). Even so, the proponent of a subpoena cannot be expected to designate each particular paper sought or to describe the contents of the requested materials in exacting detail. Nixon, 94 S. Ct. at 3103; Reyes, 239 F.R.D. at 599. "It is important to remember that 'one of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility.'" Libby, 432 F. Supp.2d at 31 (quoting United States v. Anderson, 31 F.Supp.2d 933, 945 (D.Kan.1998)).

Fiegl argues that the subpoena lacks specificity because it does not identify the precise information Stukenbrock seeks within the tax returns. Based upon the arguments presented, this court understands Fiegl to be saying that defendant must tell him exactly what information he seeks within the documents and explain why---i.e., matters that comprise defendant's intended trial strategies. In any event, a subpoena will satisfy the specificity requirement, even if it does not "describe fully" the information sought, "if there is a 'sufficient likelihood,' demonstrated through

4

rational inferences, that the documents being sought contain relevant and admissible evidence." Libby, 432 F. Supp.2d at 31 (citing Nixon, 94 S. Ct. at 3103).  This court finds that the subpoena is sufficiently specific and seeks discrete types of documents from limited time periods that permit a rational inference that the requested documents contain relevant and admissible evidence.

**D. Privilege**

Finally, Fiegl argues that the subpoena must be quashed because the requested returns are privileged under California law.  That privilege, however, is not absolute.  And, at any rate, in criminal matters, Fed. R. Evid. 501 requires the court to apply the federal law of privilege. Rajaratnam, 753 F. Supp.2d at 323.  The U.S. Supreme Court has stated that "although tax returns . . . are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to discovery."  St. Regis Paper Co. v. United States, 82 S. Ct. 289, 295-96 (1961); see also Heathman v. United States Dist. Ct., 503 F.2d 1032, 1035 (9th Cir. 1974) (affirming an order to produce tax returns and concluding that a federal statute restricting the publicity of tax returns "only restricts the dissemination of tax returns by the government and . . . does not otherwise make copies of tax returns privileged.").  This court finds no basis to quash the subpoena on privilege grounds.

While federal law recognizes that tax returns are subject to privacy, the right to privacy may give way to a compelling need, such as where "the interests in truth and a criminal defendant's rights are both implicated."  Rajaratnam, 753 F. Supp.2d at 325.  For the reasons discussed above, this court concludes that defendant has made such a showing here.

Accordingly, the motion to quash is denied as to the requested tax returns, which shall be produced to defense counsel within 14 days from the date of this order.

However, in view of the sensitive nature of the documents, this court finds that a protective order is warranted to restrict the use and dissemination of the requested tax returns.  Defendant is agreeable to a protective order; and, indeed, defense counsel confirms that defendant himself has no need for details within the documents.  This court directs defendant and Fiegl to promptly meet-and-confer to attempt to agree on the terms of a suitable protective order, to be submitted within 7 days from the date of this order for this court's review and approval.  To the extent they

1  cannot agree upon a form of protective order, defendant and Fiegl shall, within 7 days from the
2  date of this order, submit their respective proposed orders for this court's review, along with a
3  letter brief (no more than 2 pages) explaining why they believe their proposal is appropriate.
4      Meanwhile, for defendant's and Fiegl's guidance, this court concludes that any such
5  protective order should include at least the following restrictions:

- This court sees no need for the defense to have access to Fiegl's Social Security number, and that information may be redacted from the documents.
- The documents may only be used for the specific purpose of preparing or presenting a defense in this matter, unless specifically authorized by the court.
- Stukenbrock shall not see or have access to the requested tax returns, and defense counsel can disclose no more to defendant than that information which might assist his defense.
- The documents may be disclosed only to staff at the Federal Public Defender's Office and to retained experts whose access to the materials is necessary to the preparation or presentation of Stukenbrock's defense.
- There should be a limit to the number of copies that may be made.
- The protective order should provide for the return (or destruction, if appropriate) of the documents at the conclusion of this litigation.

SO ORDERED.

Dated: September 29, 2016

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:15-cr-00034-EJD-1 Notice has been electronically mailed to:

Amber S. Rosen    amber.rosen@usdoj.gov, caseview.ecf@usdoj.gov

Frank R. Ubhaus    fru@berliner.com, shelley.barajas@berliner.com

Robert Michael Carlin    robert_carlin@fd.org, mara_goldman@fd.org, mary_Jane_Snyder@fd.org, susie_barrera@fd.org