Matthew J. Jacobs (SBN 171149)
  mjacobs@velaw.com
Erica Connolly (SBN 288822)
  econnolly@velaw.com
Adam Crider (SBN 305526)
  acrider@velaw.com
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979-6900
Facsimile: (415) 651-8786

Jennifer S. Freel (admitted *pro hac vice*)
  jfreel@velaw.com
2801 Via Fortuna, Suite 100
Austin, TX 78746
Telephone: (512) 542-8535
Facsimile: (512) 236-3200

Attorneys for Defendant
Christian Reimer Stukenbrock

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CHRISTIAN REIMER STUKENBROCK,<br><br>　　　　　　　　　Defendant. | Case No.  CR-15-00034-EJD (VKD)<br><br>**NOTICE OF MOTION AND DEFENDANT CHRISTIAN STUKENBROCK'S MOTION TO SUPPRESS CIVIL LITIGATION TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] ORDER**<br><br>Judge:　Hon. Edward J. Davila<br>Date:　November 13, 2018<br>Time:　10:00 a.m.<br>Dept.:　Courtroom 4 |

**NOTICE OF MOTION TO SUPPRESS AND MOTION**

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on November 13, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Edward J. Davila, Defendant Christian Stukenbrock will and hereby does move the Court for an order to suppress civil litigation testimony of Stukenbrock obtained in violation of his Fifth Amendment rights.

This motion is supported by the attached memorandum of points and authorities; the files and records in this case; and such evidence or argument presented at a hearing on this matter.

|  |  |
|---|---|
| Dated: November 9, 2018 | VINSON & ELKINS LLP<br><br>By:  */s/ Erica Connolly*<br>Erica Connolly<br>Attorney for Defendant<br>CHRISTIAN REIMER STUKENBROCK |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This criminal case started as a civil dispute between George Fiegl and Christian Stukenbrock. That lawsuit concerned investments Fiegl made with Stukenbrock's company, Silicon Valley Technology Group, Inc. ("SVTG"). Apparently unsatisfied with the potential for civil recovery, shortly after filing his civil case, Fiegl contacted the FBI, imploring the agency to start a criminal investigation into Stukenbrock. The FBI took the bait.

Fiegl did more, however, than merely alert the FBI; Fiegl and his representatives fed FBI agents subpoenaed bank records, pleadings filed by Stukenbrock, and, at issue in this motion, a four-volume transcript of Stukenbrock's civil deposition and a transcript of Stukenbrock's testimony from a bench trial in the civil case. The FBI, thus, received from Fiegl what it could not obtain as part of its investigation: Stukenbrock's sworn testimony, compelled as a defendant in the civil lawsuit brought by Fiegl. The FBI failed to provide any notice that Stukenbrock was the subject of a parallel, pending criminal investigation. The FBI also failed to provide Stukenbrock notice of his Fifth Amendment right against self-incrimination.

Fiegl was no mere private actor that happened to turn over evidence to the FBI. Fiegl provided these materials with the knowledge and acquiescence of FBI agents and appears to have done so with the primary intent of ensuring prosecution of Stukenbrock. Under these circumstances, Fiegl and his representatives took on the mantle of a state actor, with all of the constitutional obligations imposed upon a state actor, including the Fifth Amendment's due process assurances and protections against compulsory self-incrimination.

Stukenbrock recently learned the government intends to employ the fruits of the unconstitutional compulsion of Stukenbrock's testimony. In its exhibit list and in its pretrial conference statement, filed on November 6, 2018 (*see* Dkt. Nos. 165, 167), the government lists the transcripts from Stukenbrock's civil deposition and the trial from the civil case concerning the control of SVTG. The government, in its pretrial conference statement, admits these statements are incriminating.

In light of the upcoming start of trial, the defense is not requesting a separate evidentiary hearing to determine whether the government violated Stukenbrock's Fifth Amendment rights. Instead, the defense respectfully requests that the Court prohibit the government from introducing the transcripts until the defense has had an opportunity to voir dire certain witnesses involved in the communications about the civil case. Specifically, Stukenbrock needs answers from Fiegl; FBI agent Erin Bachmann (née Whitchurch); FBI analyst Kathryn Kanetzke (née Dyer); and Boris Budagyan, Fiegl's personal assistant. Fiegl, Bachmann, and Kanetzke are on the government's witness list. (*See* Dkt. No. 166). After receiving this testimony, the Court should be able to determine whether the government violated Stukenbrock's Fifth Amendment rights by having Fiegl and his representatives surreptitiously work for the government.

## II.   BACKGROUND

### A.   Interactions between the government and Fiegl or his representatives.

From almost the beginning of his civil lawsuit against Stukenbrock, Fiegl simultaneously sought to have the government start a parallel criminal investigation. Just one a month after filing the civil suit, Fiegl had his first interview with the FBI. Exs. A, B, R. Boris Budagyan, Fiegl's personal assistant, was present at that interview and every other interview. Ex. B.

Fiegl's civil complaint, which he provided to the FBI during his first interview, alleges essentially the same facts the government raises here: that Stukenbrock purportedly made misrepresentations to Fiegl regarding how the investments in SVTG would be used. Ex. A. The FBI initiated a full investigation into Stukenbrock on January 13, 2012, just thirty-six days after Fiegl filed the civil suit. Ex. C.

Fiegl and his representatives intended from the start of the civil case to feed information to the FBI for the criminal investigation. As the civil case progressed, Fiegl and Budagyan had ongoing dialogue with FBI agents, first Special Agent Miller and then Special Agent Erin Whitchurch, who took over the investigation from Miller. Ex. D. As reflected in the emails produced by the government, that dialogue consisted, in large part, of Fiegl and his representatives pushing the FBI to pursue the case against Stukenbrock. For example, on November 26, 2012, after an introduction to Whitchurch, Fiegl wrote to Whitchurch to ask her to "continue the momnetum [sic]" of the

2

investigation. *Id.* at 016089-90. Fiegl also suggested meeting with Whitchurch after his counsel took Stukenbrock's deposition. *Id.*

Their correspondence continued. On December 4, 2012, Whitchurch asked Fiegl for the "name and contact information of [his] civil attorney" so that she could "see what financial documents have been subpoenaed and he/she can share and what [Whitchurch] will need to subpoena." *Id.* at 016089. Budagyan responded, copying Fiegl, with details about the bank records that had been subpoenaed. Budagyan offered to provide a "DVD of [the bank] records along with DVD of Stukenbrock's depo." *Id.* On December 10, 2012, Whitchurch acknowledged receipt of "the CDs [Budagyan] left at the office" and thanked Budagyan for bringing the materials. *Id.*

On December 13, 2012, Budagyan wrote to Whitchurch to let her know that the deposition of Andreas Cerdan, on behalf of True Exotic, had occurred the day before and offered to provide a video of the deposition. *Id.* at 016088. On December 20, 2012, Budagyan sent an email to Whitchurch with eight attachments, the titles of which suggest they were related to SVTG operations. Ex. C. On January 2, 2013, Budagyan told Whitchurch that he had "videos and transcripts for Andreas Cerdan (True Exotic) and Stukenbrock's Dec. 6 last volume depo." Ex. D at 016087. He offered to "drop a DVD of those records tomorrow in [Whitchurch's] office." *Id.* Whitchurch responded, "That's great – thank you!" *Id.*

On April 9, 2013, Fiegl's civil lawyers showed the government a PowerPoint presentation in which they outlined for the government how Fiegl's allegations against Stukenbrock amounted to violations under 18 U.S.C. § 1343. Ex. E. Attending the meeting were Whitchurch, AUSA Amber Rosen, and FBI analyst Kathryn Dyer (who has since married and changed her name to Kanetzke). Ex. F. Listed as "Key Evidence" and "Key Documents" were the materials at issue in this motion: transcripts of Stukenbrock's deposition and his trial testimony. Ex. E.

The communications didn't stop with the PowerPoint pitch. In early July 2013, Whitchurch had a call with Budagyan and possibly Fiegl. Ex. D at 016087. Budagyan followed that call with an email, in which he began forwarding Whitchurch additional documentation from the civil lawsuit. *Id.*

On November 12, 2013, Fiegl's civil attorneys again met with Whitchurch, Dyer, and Rosen so his civil attorneys could "update [them] on the various civil actions filed against Stukenbrock." Ex. G.  In an email following the meeting, Keith Wurster, counsel for Fiegl, provided several documents from the civil case, including transcripts from the second trial in the civil case Fiegl brought against Stukenbrock.  *Id*.  On December 10, 2013, Wurster sent another email to Whitchurch, asking for an update on the status of the investigation and prodding her about contacting an Albutec[1] representative.  Ex. H.

On February 20, 2014, Fiegl's civil attorney, Colin Murray, wrote to Whitchurch to update her on the status of the civil proceedings and to send her judgments and statements of findings from the case.  Ex. I.  In his email, Murray stated that he "and Mr. Fiegl believe the only way for justice to be served in this situation is if a criminal case is filed against Stukenbrock" and that "indictment of Stukenbrock is likely be [sic] the only hope for Mr. Fiegl to recoup at least some of his losses through restitution."  *Id*.  According to the email, Fiegl and his counsel "stand ready to the investigation assist [sic] in any manner."  *Id.*

On August 8, 2014, in response to a voicemail from Whitchurch, Murray sent an email that he had a copy of Stukenbrock's testimony from the March 2013 bench trial concerning control of SVTG.  Murray said he would have his paralegal send it to Whitchurch, which she did.  Exs. J, K.

In 2015, Budagyan was deposed in a civil case involving one company in which SVTG invested, Protech. Budagyan testified in the deposition that for approximately four years he was employed by Fiegl as a personal assistant with the sole responsibility of managing the litigation involving Stukenbrock.  Ex. T at 38-40. Budagyan admitted that Fiegl had spent at least $1.5 million to investigate Stukenbrock.  *Id.* at 120. Fiegl did so, even though SVTG had a "zero value."[2]  *Id.*

Finally, as the criminal case geared up for trial in July 2016, Whitchurch (having married and changed her name to Bachmann), wrote to Murray to "ensure we have all the documents from Fiegl's

---

[1] SVTG invested funds in Albutec, a German company.

[2] As the Court is well-aware, Stukenbrock qualifies as an indigent defendant and has appointed counsel in his criminal case. On this record, both SVTG and Stukenbrock have no ability to pay a civil judgment. This leads to an obvious question: Why would Fiegl spend $1.5 million to pursue a lawsuit with no hope of recovering any allegedly lost money? The answer appears to be, he spent the money to assist the government's prosecution of Stukenbrock.

4

civil suits, including depositions, transcripts, exhibits, and anything else that might be pertinent." Ex. L. She asked for a "'complete package' for each deposition and trial," and Murray's paralegal obliged shortly thereafter. *Id.*

### B. The government failed to inform Stukenbrock that he was the subject of a parallel investigation.

Neither Stukenbrock nor his civil counsel knew Fiegl and his representatives were conducting a criminal investigation on behalf of the FBI. Believing he was merely a party to a civil lawsuit, Stukenbrock attended civil depositions on four dates: August 8, 2012; November 29, 2012; November 30, 2012; and December 6, 2012. Exs. M, N, O, P. Fiegl attended all four of those depositions, and Budagyan attended three of them. Exs. M, N, O, P. On March 19, 2013, Stukenbrock also provided testimony in the bench trial regarding control of SVTG, which Fiegl and Budagyan also attended. Ex. Q.

Stukenbrock was represented by counsel during the four depositions. Exs. M, N, O, P. He was not represented by counsel during the trial on control of SVTG. Ex. Q. At neither the depositions nor the bench trial did anyone tell Stukenbrock that the FBI had begun a criminal investigation into the same subject matter as the civil lawsuit. Likewise, no one advised him of his Fifth Amendment right against self-incrimination.

## III.  LEGAL STANDARD

The Fifth Amendment provides that a person shall not "be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment protects against the use of incriminating statements involuntarily given. *See Garrity v. State of New Jersey*, 385 U.S. 493, 497 (1967). Where an "individual is subjected to a practice that denies him…a free choice to admit, to deny, or to refuse to answer, then any statement he makes is considered involuntary and cannot be used in a criminal proceeding." *United States v. Saechao*, 418 F.3d 1073, 1077 (9th Cir. 2005) (internal quotations omitted). Exclusion of the statements is the appropriate remedy for violations of the Fifth Amendment. *Id.* at 1081.

"[W]here a private party acts as an 'instrument or agent' of the state," constitutional interests "are implicated." *United States v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)). To determine whether a private party steps into the role of state actor, the Court must consider two factors: 1) "whether the government knew of and acquiesced in the intrusive conduct; and 2) whether the party performing the search intended to assist law enforcement efforts or further his own ends."[3] *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994).

## IV.   ARGUMENT

### A.   The evidence suggests Fiegl and his representatives qualify as state actors and, as such, had Fifth Amendment obligations.

Discovery provided by the government supports the conclusion that Fiegl and his representatives assumed the role of state actors in the civil action against Stukenbrock, thus obligating themselves to act in accordance with Fifth Amendment requirements. At the very least, the written communications between Fiegl, his representatives, and the FBI are sufficiently suggestive that the Court should permit defense counsel to question Fiegl; FBI agent Whitchurch; FBI analyst Kanetzke; and Budagyan about their interactions involving the civil suit. The Court should hear more about the nature of the government's relationship with Fiegl and his representatives before deciding whether to admit transcripts from the civil case.

#### 1.   The FBI relied on and encouraged Fiegl and his representatives to provide Stukenbrock's testimony from the civil case.

The first prong of the *Reed* test is satisfied by the written correspondence between FBI agents and Fiegl and his representatives and 302 reports describing other interactions between them. These show that Agents Miller and Whitchurch not only knew of and acquiesced in the intrusive conduct,

---

[3] Although the Ninth Circuit's holdings appear in the Fourth Amendment context, both the Supreme Court and the Ninth Circuit have recognized Fifth Amendment requirements on private actors who are acting as state agents. *See Estelle v. Smith*, 451 U.S. 454 (1981); *United States v. Roston*, 986 F.2d 1287, 1292 (9th Cir. 1993) (private party may be required to provide Miranda warnings when acting as state agent); *United States v. Pace*, 833 F.2d 1307, 1313 (9th Cir. 1987) (same). The Ninth Circuit has suggested on at least one occasion that the Fourth Amendment state actor analysis is warranted to determining whether a private actor had Fifth Amendment obligations. *Pace*, 833 F.2d at 1313 n.4.

but actively relied on Fiegl and his representatives to investigate the case against Stukenbrock. Indeed, Fiegl spent at least $1.5 million on the investigation and paid a fulltime employee to manage it. Meanwhile, the record suggests the government did not execute a single search warrant in this case. And, the government's witness lists shows the prosecutor intends to call the same accountant Fiegl used in the civil lawsuit—an account who is not a government agent, but paid by Fiegl for his work. *See* Dkt. No. 166.

This repackaging of the civil lawsuit into a criminal prosecution has been underway since the beginning of the civil case. In Fiegl's first interview with Miller, Fiegl and Budagyan provided Miller with the civil complaint, which Miller put into the case file. Exs. A, B, R. Fiegl and Budagyan informed Whitchurch that Stukenbrock's deposition was occurring on November 29 and 30 and asked to meet with her following the deposition. Ex. D at 016089-90. On December 10, Budagyan brought a DVD of the deposition testimony to Whitchurch, who thanked him for the materials. *Id.* at 016089. After Stukenbrock's December 6 deposition, Budagyan again provided a DVD of the testimony to Whitchurch, who responded "That's great – thank you!" *Id.* at 016087. In August 2014, Whitchurch contacted Fiegl's counsel, Murray, to ask for Stukenbrock's trial testimony. Exs. J, K. And, as the criminal case geared up for trial in July 2016, Whitchurch contacted Murray once more to ask for all of the civil case materials, including deposition and trial testimony. Ex. L. Whitchurch went to Fiegl and his representatives to obtain information she could not acquire on her own: compelled, incriminating testimony by Stukenbrock.

Perhaps most tellingly, Fiegl and his counsel sent the FBI an email saying they were ready to "assist" the investigation "in any manner." Ex. I. Nothing in the record suggests anyone from the government told them not to do that. Nothing in the record suggests anyone told Fiegl and his entourage to stand down and let the government do the investigating.

The role of the deposition testimony in the government's case is underscored by the April 13, 2013 PowerPoint presentation, in which Fiegl's counsel outlined how the evidence gleaned from the civil case amounted to a criminal case against Stukenbrock for wire fraud. Ex. E. That proffer listed as "key documents" to the case Stukenbrock's deposition and trial testimony. Ex. E.

*United States v. Reed*, 15 F.3d 928 (9th Cir. 1994), is instructive.  There, the Ninth Circuit held that the first prong was "obviously" met where law enforcement officers "knew exactly what [the private actor] was doing as he was doing it, and made no attempt to discourage him." *Id.* at 931.  Here, Whitchurch knew exactly what Fiegl and his representatives were doing—they provided information about upcoming depositions and trial testimony and then provided transcripts of the testimony—and she made no attempt to discourage them and specifically asked them for the materials to prepare for trial.

The government's discovery shows that the first prong of the test is satisfied.

### 2. Fiegl and his representatives always intended to assist law enforcement in a prosecution against Stukenbrock.

The second prong of the test—whether Fiegl and his representatives intended to assist law enforcement efforts or further his own ends—is also met by the government's discovery.  That discovery reveals that Fiegl not only intended to assist law enforcement, his "own ends" was in fact the prosecution of Stukenbrock.

Fiegl met with the FBI to discuss a criminal investigation into Stukenbrock only a month after filing the civil case against him. Exs. A, B. R.  Fiegl asked Whitchurch to "continue the momnetum [sic]" on the investigation in the same email in which he alerted her to the November 29 and 30 depositions of Stukenbrock. Ex. D at 016089-90.  Using the subpoena power in the civil case, Fiegl and his representatives turned over scores of bank records to Whitchurch along with the deposition and trial testimony to help move the case along.  Ex. D at 016089.  As Fiegl's counsel stated to Whitchurch, "Mr. Fiegl believe[s] the only way for justice to be served in this situation is if a criminal case is filed against Stukenbrock" and that "indictment of Stukenbrock is likely be [sic] the only hope for Mr. Fiegl to recoup at least some of his losses through restitution."  Ex. I  His counsel further expressed that "[a]bsent indictment, we believe it's only a matter of time before Stukenbrock will engage in further criminal activity."  Ex. I

*Reed* is again instructive.  There, the Ninth Circuit held that the private actor, a hotel manager, had intended to assist law enforcement and not merely his "own ends" where the private actor

conducted a search with the intention of providing law enforcement with "enough information" to take action. 15 F.3d at 932. In so holding, the Ninth Circuit stated that the private search must have "a legitimate motive other than crime prevention" and that "finding evidence of criminal activity is not independent." *Id.*; *see also Walther*, 652 F.2d at 792 (private actors may be deemed government actors where the intrusive activity was conducted "for the sole purpose of assisting the government.")

Like the private actor in *Reed*, the motivation of Fiegl and his representatives in pursuing the civil action was to ensure the criminal prosecution of Stukenbrock. The timing of Fiegl's approach to the government, the ongoing feed of the civil case materials to the FBI, and his counsel's PowerPoint outline of a criminal case against Stukenbrock all point to the same thing: Fiegl's goal was a criminal case against Stukenbrock; the civil case was just a means to that end.

Under these circumstances, Fiegl and his representatives must be considered state actors who had Fifth Amendment obligations toward Stukenbrock.

### B. Stukenbrock's statements in the depositions and trial testimony were involuntary under the Fifth Amendment.

As an initial point, the government has not only included Stukenbrock's deposition and trial testimony on its exhibit list, but also expressly stated in its pretrial conference statement that it considers Stukenbrock's testimony to be incriminating. (*See* Dkt. Nos. 165, 167). The only issue, therefore, is whether Stukenbrock provided that testimony free from coercion as mandated by the Fifth Amendment. *Lisenba v. California*, 314 U.S. 219, 237 (1941) ("The concept of due process would void a trial in which, by threats or promises in the presence of court and jury, a defendant was induced to testify against himself. The case can stand no better if, by resort to the same means, the defendant is induced to confess and his confession is given in evidence.").

The circumstances in which Stukenbrock provided his testimony reflect that his statements were compelled in violation of the Fifth Amendment. Coercion that renders a statement involuntary is not limited to custodial interrogations or to physical intimidation. It can be "'mental as well as physical'"; "[s]ubtle pressures … may be as telling as coarse and vulgar ones." *Garrity v. State of New Jersey*, 385 U.S. 493, 497 (1967). "The question is whether the accused was deprived of his

9

'free choice to admit, to deny, or to refuse to answer.'" *Id.* (quoting *Lisenba*, 314 U.S. at 241).

As a party to the case, Stukenbrock was obligated to sit for deposition testimony. Indeed, when Fiegl was unhappy with the answers Stukenbrock provided during his August 8 deposition, Fiegl filed a motion to compel Stukenbrock to provide additional deposition testimony, a motion the Court granted by requiring Stukenbrock to sit for two additional days of testimony. Ex. R. When Stukenbrock opted to no longer participate in the case and avoid testifying in the second trial regarding liability, the consequences were significant: he had a default judgment entered against him in the amount of $21 million dollars. Ex. S

The government no doubt will argue that Stukenbrock is no different from other witnesses who face consequences for their failure to testify, but Stukenbrock's situation is markedly different. Because Fiegl and his representatives surreptitiously contacted the FBI to start the criminal investigation and never disclosed its existence to Stukenbrock, neither Stukenbrock nor his counsel were aware that Stukenbrock "face[d] a realistic threat of self-incrimination." *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). Because of Fiegl and his representatives' conduct, Stukenbrock and his counsel also had no opportunity to request that the civil case be stayed pending the outcome of the criminal investigation to avoid the unfair prejudice that he now faces. Further disadvantaging him, during the trial about control of SVTG, Stukenbrock was no longer represented by counsel, who could have advised him about the consequences of any statements he made during the trial. *See United States v. Kordel*, 397 U.S. 1, 12 (a civil "case where the defendant is without counsel" or other "special circumstances" suggests "the unconstitutionality or even the impropriety of [a] criminal prosecution."). These circumstances underscore that the testimony was coerced in violation of the Fifth Amendment.

V.  **CONCLUSION**

Based on the reasons above, the defense requests that the Court exclude any of Stukenbrock's civil deposition or trial testimony on grounds that it violates the Fifth Amendment. At the very least, the Court should allow the defense an opportunity to voir dire Fiegl, Whitchurch, Kanetzke, and

//

//

1  Budagyan, outside the presence of the jury, regarding the circumstances leading to the government's
2  receipt of Stukenbrock's testimony.

Dated: November 9, 2018

VINSON & ELKINS LLP

By:  */s/ Erica Connolly*
Erica Connolly
Attorney for Defendant
CHRISTIAN REIMER STUKENBROCK

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 9, 2018, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means.

Dated: November 9, 2018       By: */s/ Erica Connolly*
                                  Erica Connolly
                                  Attorney for Defendant
                                  CHRISTIAN REIMER STUKENBROCK

**[PROPOSED] ORDER**

Having considered the facts regarding the conduct of George Fiegl and his representatives as well as the government's actions, the Court finds that both prongs of the *Reed* test are satisfied and George Fiegl and his representatives should be considered state actors. The Court further finds that Christian Stukenbrock's civil litigation testimony was involuntary in violation of the Fifth Amendment and should be suppressed. Accordingly, the Court ORDERS that Stukenbrock's civil litigation testimony shall be excluded.

**IT IS SO ORDERED.**

DATE: _____

Hon. Edward J. Davila
U.S. District Court Judge