Pages 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL COUSINS, MAGISTRATE JUDGE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 5:15-cr-00034-EJD |
| | ) | |
| CHRISTIAN REIMER STUKENBROCK, | ) | |
| | ) | |
| Defendant. | ) | San Jose, California |
| _____ | ) | Monday, May 11, 2015 |


**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 1:37 p.m - 2:05 p.m. and
2:12 p.m. - 2:19 p.m. =  35 minutes

APPEARANCES:

For Plaintiff:          MELINDA L. HAAG, ESQ.
                        United States Attorney
                        150 Almaden Boulevard, Suite 900
                        San Jose, California  95113
              BY:   **AMBER S. ROSEN**
                        Assistant United States Attorney


For Defendant:          STEVEN KALAR
                        Federal Public Defender
                        55 South Market Street, Ste. 820
                        San Jose, California  95113
              BY:   **ROBERT MICHAEL CARLIN**
                        **Assistant Federal Public Defender**

ALSO PRESENT:  LaDreena Walton, U.S. Pretrial Services Officer


Transcribed By:         Leo T. Mankiewicz, Court Reporter
                        leomank@gmail.com
                        (415) 722-7045

<u>Monday, May 11, 2015</u>

1:37 p.m.

P R O C E E D I N G S

(Defendant present in court.)

**THE CLERK:**  Calling criminal 15-0034, United States versus Christian Reimer Stukenbrock.

**MS. ROSEN:**  Good afternoon, your Honor.  Amber Rosen for the United States.

**THE COURT:**  Good afternoon.

**MR. CARLIN:**  And your Honor, good afternoon, Robert Carlin appearing for Mr. Stukenbrock, who is present before your Honor.

**THE COURT:**  Good afternoon to you both.  This matter is on for two things.  First is the completion of the financial affidavit by the defense.

Mr. Carlin, have you had to chance to evaluate that?

**MR. CARLIN:**  We -- it's a work in progress, and if I might save that for the next appearance, or file it with the Court, I would appreciate that.

**THE COURT:**  Very well.  We'll continue, then, your temporary representation --

**MR. CARLIN:**  Thank you, your Honor.

**THE COURT:**  -- until that process is completed and we'll just notate for our records that it still needs to be submitted.

1          Then the second matter of business was the detention

2     hearing, and the Court has received the Pretrial Services

3     report.  Have the parties each had an opportunity to review

4     that?

5               **MS. ROSEN:**  Yes, your Honor.

6               **MR. CARLIN:**  And yes, we have, your Honor.

7               **THE COURT:**  And are you ready to proceed,

8     Mr. Carlin, or is additional time needed for a further

9     investigation?

10              **MR. CARLIN:**  We -- and I'll take the Court's read on

11    this, so to speak -- I think that we agree with the

12    recommendation in principle, and of course, it was subject to

13    the provision of a viable surety.  We believe, and we are --

14    unfortunately, until yesterday evening or at least yesterday,

15    our viable surety was out of town.  So we were somewhat

16    hamstrung by that, but Mr. Stukenbrock's daughter is in court

17    today.  She's in the third row, along with her mother,

18    Mrs. Stukenbrock's ex-wife, and she is willing to sign as a

19    surety on the conditions suggested by Pretrial Services, and

20    I believe, and I'm happy to explain why, that those conditions

21    would be appropriate and that she would be a viable surety, but

22    I understand that Pretrial Services has not had an opportunity

23    to speak with Kristina, Ms. Stukenbrock, so I don't know

24    whether your Honor would want to direct questions to her or

25    whether or not the Court would prefer that we were to come back

1    tomorrow, subject to that interview.

2              THE COURT:  All right, well, I appreciate that, and

3    one of the considerations is whether the government has had an

4    opportunity to evaluate her appropriateness as a surety and

5    whether you can confer about that with government counsel and

6    whether that might aid the overall efficiency of the argument.

7    So I could take it either way.

8              MR. CARLIN:  I think -- and I won't speak for

9    Ms. Rosen, but we had a very brief conversation, and I did

10   confirm subsequent to that conversation that Ms. Stukenbrock is

11   employed.  She works in Monterey, at Robert Talbot.  I think

12   the annual salary is around $45,000.  But there's no resources

13   beyond her employment and her integrity, which I believe, based

14   on my brief interactions, seems to be quite manifest.

15             THE COURT:  All right.  Well, then, let me hear from

16   Ms. Rosen as to what process she proposes, but as both parties

17   have acknowledged, the recommendation from Pretrial Services is

18   that there be a -- if a viable co-signer is available, and it's

19   been proposed that Kristina is that person, that

20   Mr. Stukenbrock be released on an unsecured appearance bond in

21   an amount to be determined, with a variety of special

22   conditions of release, which are relatively standard ones.

23             So before getting into all the issues, Ms. Rosen, do

24   you have a view as to the process we should follow?

25             MS. ROSEN:  Your Honor, I guess I wasn't aware that

1  we had previously indicated we were okay with an unsecured

2  bond.  Did that happen at the last hearing?

3  **THE COURT:**  You haven't agreed to it.

4  **MS. ROSEN:**  Oh.

5  **THE COURT:**  You haven't agreed to it.

6  **MS. ROSEN:**  Oh, okay.

7  **THE COURT:**  So I'm asking you if you do agree with

8  that or if you don't agree with it.

9  **MS. ROSEN:**  Okay, thank you.  I think we're

10  concerned about there being an unsecured bond in this case.

11  The defendant does have significant ties to Germany.  He is a

12  German citizen.  He spent the last four months there.  You

13  know, although he has lived here in the past and he has some

14  family here, including his ex-wife and daughter -- and two

15  daughters, he has no residence, he has no employment, he seems

16  to have no assets, and while we wouldn't be opposed to a

17  surety, I think a secured bond may be more appropriate in this

18  particular case.

19      I mean, he does have one failure to appear.  It was

20  for the DMV, but still it was a failure to appear, from just

21  2013.  So we do have some concerns about the flight risk.

22  **THE COURT:**  All right, and of course, the other

23  aspect of the Court's detention decision is any danger to the

24  community.  That was not a factor that indicated to Pretrial

25  Services that the defendant be detained.

1          Does the government have any additional concerns

2    about danger that haven't been expressed yet?

3          **MS. ROSEN:**  No, we don't, your Honor.  Our concerns

4    are really more about non-appearance than it is to danger to

5    the community.

6          **THE COURT:**  All right.  Then let me turn back to the

7    defense to say, the focus here is on risk of non-appearance,

8    and my primary question is, where is he going to be released

9    to, where is he going to be residing, and might this be a case

10   where a custodian is appropriate, and wanting more details

11   about that, and again, not because of danger to the community,

12   but just a risk of non-appearance.

13         **MR. CARLIN:**  I think with respect to the issue of

14   flight, one thing that seems quite clear to me -- and I'm

15   taking this out of sequence, but it is something that's of

16   significance -- this particular matter has already been subject

17   to, I think, some pretty rigorous civil litigation, of which

18   Mr. Stukenbrock has been mindful.  He's involved in it, and

19   I think that to a person of average intelligence, and it seems

20   to me that Mr. Stukenbrock is considerably above that, it was

21   quite likely that this case -- and he was represented -- would

22   at some point turn into a federal indictment.

23         Mr. Stukenbrock was in Germany, as Ms. Rosen has

24   remarked and Pretrial Services has observed, with that

25   information, with that knowledge, with that potential, and yet

1   he came back to the United States, and I think that any notion

2   that he might not be honorable with respect to his obligations

3   in staying around to contest this case are belied by the fact

4   that whilst in Germany, he still chose to come back.

5            And I think that, your Honor, is significant, allied

6   with the fact that he has a long-standing residence and

7   relationship with the Northern District of California.  He does

8   have family.  They are here, they are supportive.  Even his

9   ex-wife, who was admirably circumspect in her communication

10  with Pretrial Services, is here, which I think belies a measure

11  of support that should give the Court some comfort.

12           And frankly, I think the other of it, too, is in

13  terms of incentives, this is a case that Mr. Stukenbrock

14  I think intends to vigorously defend, and so there's no reason

15  for him to leave.

16           With respect to your Honor's question, I don't think

17  at this point, in all candor, there is someone that could act

18  as a custodian.  We understand that Pretrial Services is in

19  place and Mr. Stukenbrock understands that conditions would be

20  imposed to which he would subject, and there's no quarrel with

21  a degree of supervision, frankly, that is elevated to offset

22  the lack of a custodian.

23           Our anticipation, your Honor, is as follows:  If

24  your Honor is inclined to release Mr. Stukenbrock subject to

25  Pretrial Services' approval or your Honor's satisfaction with

1    Kristina, that he would live with Kristina whilst he secures

2    his own residence, which again would be subject to Pretrial

3    Services' approval.

4            If for some reason Pretrial Services does not

5    approve, we'd be happy to come back before your Honor and deal

6    with that issue then, but that would be -- and the address for

7    Kristina, if the Court wants it, is 500 Glenwood Circle in

8    Monterey, Zip Code is 93940.  So he would, without delay,

9    immediately look for a place to live, under the auspices and

10   supervision of Pretrial Services.

11           And again, to offset any concern that your Honor may

12   have about lack of a custodian, we would be willing to and

13   amenable to perhaps more rigorous reporting requirements with

14   Pretrial.

15           **THE COURT:**  And is -- of course, the custodian

16   situation is not what was recommended by Pretrial, so you may

17   not have investigated that, maybe you have.

18           Do you know that Kristina could not be a custodian

19   or does not want to be a custodian, or what's your --

20           **MR. CARLIN:**  Well, I -- no, I think my point, your

21   Honor, was more that in terms of, once he's moved out into his

22   own space, so to speak, she would be, I am sure, willing, to

23   the extent that she has interaction with Mr. Stukenbrock, to

24   undertake that, but it wouldn't be kind of a daily routine

25   supervision, so to speak, if I'm understanding your Honor's

1    question.

2            **THE COURT:**  I think you're understanding it.  The

3    question is whether that's going to be stable enough to --

4            **MR. CARLIN:**  Well, if I might, your Honor, the

5    other -- with respect to Ms. Rosen's comment about the traffic

6    ticket, I don't know enough about that and I wouldn't be able

7    to speak to whether or not that was a knowing failure on

8    Mr. Stukenbrock's part or not, but I was interested in page --

9    page 4 of the Pretrial Services report, which references his

10   having been on a federal bond from what appears to be June of

11   2000 until May of 2001, which bond was exonerated upon

12   dismissal of the case.

13            So I think that that might be a better indication of

14   his amenability to supervision, if there was supervision,

15   and/or his propensity to follow rules and regulations as set

16   out by a federal magistrate judge, because that apparently

17   occurred here, and there were, in fact, modifications of the

18   bond that seem to suggest that Mr. Stukenbrock earned a level

19   of trust.

20            **THE COURT:**  The other issue which I will need your

21   guidance on is the proper amount of a bond.  There is not an

22   amount --

23            **MR. CARLIN:**  Correct.

24            **THE COURT:**  -- recommended by -- I understand the

25   government has concerns that an unsecured bond may not be

1    sufficient, but even if we're talking about an unsecured bond,

2    what would be the appropriate amount, and here, while I have

3    some information about the defendant's background, I haven't

4    seen the declaration that goes along with the application for

5    counsel, so I don't have that information.  I have an

6    indictment charging economic crimes, so that's a charge -- he's

7    presumed innocent, but there's that type -- it's that type of a

8    case.

9            So there's some information which I don't have, to

10   try to find a bond amount that's a proper amount.

11           **MR. CARLIN:**  Correct.  All I can say at this point

12   is my understanding of the financial situation, at least as it

13   relates to Mr. Stukenbrock, is it's very limited, and I think

14   once the financial affidavit is furnished, it will show that

15   there are -- there is not a sufficient pool of funds, so to

16   speak, to facilitate any attempt on his part to flee the coop,

17   so to speak.

18           There are no assets to speak of.  There are -- that

19   I'm aware of.  Based on my discussion with him, I'm happy to

20   state for the record as it stands right now, there are no bank

21   accounts that are flush, there are no assets that would afford

22   him the luxury of a departure, and any ability for him to

23   offset and/or make good to family whatever loss they suffered

24   by signing a bond.  So....

25           **THE COURT:**  What is the amount of unsecured that

1  you're proposing?

2          **MR. CARLIN:**  I'm willing to have Ms. Rosen offer

3  input on that, and to defer to the Court's wisdom.  That's not

4  to say that I'm not -- I just think that we're willing, and

5  I understand Ms. Rosen's response might be, well, of course,

6  because there's nothing on the line, but I don't think a bond

7  of $100,000 would be unreasonable.

8          **THE COURT:**  All right, Ms. Rosen, what do you think?

9          **MS. ROSEN:**  Well, your Honor, I guess I would agree

10  with what Mr. Carlin predicted I would say, which is at some

11  level, it really doesn't matter what an unsecured bond is,

12  because if he doesn't appear, we have no assets, no money to go

13  after.  He has no money, he has no assets.  His daughter, you

14  know, makes only $45,000 a year, and owns no assets.

15          So, you know, that's why I think an unsecured bond

16  doesn't protect our interests in any way.  There's really

17  nothing for him to lose from fleeing.

18          **THE COURT:**  So what should I do under that

19  circumstance?

20          **MS. ROSEN:**  I think you should require some

21  security.  I mean, even with the bond that Mr. Carlin

22  referenced that the prior magistrate had imposed, it was a

23  property bond.  It wasn't an unsecured bond.  So, you know, we

24  would be comfortable with some kind of property or money that

25  were actually posted, but given that he has no employment, no

1   residence and significant travel to Germany, I guess we just

2   don't feel comfortable at this point with his release unless

3   there were some property put up and a custodian.

4           **THE COURT:**  All right, and Mr. Carlin, is there any

5   prospect for finding such property, if I gave you more time to

6   find it?

7           **MR. CARLIN:**  I don't believe there is, your Honor,

8   and of course, I think two things in response to that.  I guess

9   back then were times of greater prosperity.  The other thing,

10  of course, is that I wouldn't necessarily say that with an

11  unsecured bond Mr. Stukenbrock has nothing to lose.  I think,

12  in fact, he has quite a lot to lose, because if he were to

13  leave, he leaves his daughter, if you will, holding the bag, as

14  subject to garnished wages and subject to, beyond that, a level

15  of hurt that would be quite profound, and I don't think that

16  under the circumstances of this case and this indictment,

17  Mr. Stukenbrock has any reason to do that.

18          I think secondarily, your Honor, and I think this

19  does place your Honor in a difficult kind of situation, because

20  obviously, I wish that we had property to volunteer to secure a

21  bond, but to the extent that we don't, to the extent

22  Mr. Stukenbrock finds himself in straitened financial

23  circumstances and has family that is not flush, it seems

24  unreasonable to therefore have him detained because he doesn't

25  have the means to fund the bond, so to speak, and I think to

offset that, as I said earlier, we haven't any problem with your Honor adding to and/or intensifying the conditions of supervision because we can only volunteer, if you would, an unsecured bond.

So, you know, we don't mind if Mr. Stukenbrock is required to report to Pretrial Services weekly, or telephonically daily, whatever Pretrial Services needs to be comfortable with Mr. Stukenbrock, or that your Honor needs in order to kind of -- to get this thing, so to speak, moving, and of course, that can be modified good or bad, up or down, dependent upon his performance on supervision.

**THE COURT:**  And does that change your mind in any way?

**MS. ROSEN:**  I'm afraid not.

**THE COURT:**  All right, here's what I suggest doing -- and again, this is with your feedback, Mr. Carlin -- is to have Kristina come up and we can inquire further about some of these things and see if she, having heard what she's heard, is willing to be a surety on an unsecured bond, and then we'll have some further argument after she participates in that process.

**MR. CARLIN:**  Thank you, your Honor.

**THE COURT:**  Come on up.  If you'll speak into the microphone, please, we are making a recording of what's being said.  If you can state your full name, please?

1    **MS. STUKENBROCK:**  Yes, it's Kristina Laura

2  Stukenbrock.

3    **THE COURT:**  All right, and I'm going to ask you some

4  questions, and I'm going to have my deputy swear you in,

5  because it's under penalty of perjury.

6    **MS. STUKENBROCK:**  Um-hum.

7    **THE CLERK:**  Raise your right hand.

8    (Kristina Laura Stukenbrock, sworn.)

9    **MS. STUKENBROCK:**  Yes.

10    **THE COURT:**  All right, Ms. Stukenbrock, how do you

11  know Mr. Stukenbrock?

12    **MS. STUKENBROCK:**  He's my dad.

13    **THE COURT:**  And where do you live?

14    **MS. STUKENBROCK:**  I live in Monterey, California.

15    **THE COURT:**  How long have you lived there?

16    **MS. STUKENBROCK:**  I've lived there for a little over

17  a year.

18    **THE COURT:**  And how are you employed?

19    **MS. STUKENBROCK:**  I am employed by a company based

20  in Monterey.  I'm a merchandiser.

21    **THE COURT:**  And how long have you been working at

22  that business?

23    **MS. STUKENBROCK:**  A little over a year.

24    **THE COURT:**  I need to ask you some questions about

25  your income and assets, and I'm not trying to do that to pry

1   into your private business, but it's been proposed -- and you

2   were here in court, hearing it -- that your father be released

3   on an unsecured bond in a certain amount of money.  I'm going

4   to explain to you what that means to make sure you understand

5   it, and then will explain why I have to ask some questions

6   about your assets and income.

7            It's been proposed by the defense that he be

8   released on a $100,000 unsecured bond.  What that means is --

9   Mr. Stukenbrock, you should listen to this too, because it

10  matters to you, too -- that he's going to be released with some

11  process to come back to court to face the charges in this case.

12           If he doesn't come back to court to face the

13  charges, the consequences will be serious both to you and to

14  him.  For him, he could be re-arrested and held in custody for

15  the rest of the case and he could have additional charges filed

16  against him.  You each could have a judgment up to the amount

17  of the bond.  So if it's a $100,000 bond, the government could

18  seek to collect from him, and also from you, up to $100,000, if

19  he fails to follow these conditions and come back to court.

20           So that's a -- the intent of that is to incentivize

21  him to come back to court and to follow the rules.  If he

22  follows the rules and comes back to court, at the end of the

23  case, that bond will be terminated, there will be no money

24  collected from you, and that piece of paper is destroyed.

25           You should only be a surety for your father if you

think he can follow these conditions of release and you think he's going to come back to court.

I'm not forcing you to do it and you should not do it out of a sense of duty.  It's your own financial liberty that's going to be at stake if he's released, and so you should do it if you've had a chance to think about it and ask any questions that you need to and you determine that he's a good candidate to come back to court, because it's not something you should do if you haven't thought about it seriously and have had any chance to evaluate your choices.

Do you understand that?

**MS. STUKENBROCK:**  Yes.

**THE COURT:**  All right, and if I do release him, over the course of the case, it is possible that the rules of release might change.  In other words, sometimes there's minor variations on how frequently he has to come back to court and what expectations he has while on release.  You don't need to come back to court each time he comes to court.  You're welcome to, if you wish to, and you don't have to be in contact with the Court about what's going on, but you might choose to, just to keep track of what's happening.

Your obligation as a surety will continue unless you get permission from the Court to be excused.  In other words, once you agree that you're going to be a co-signer on his release, your obligation up to that amount is going to continue

1   unless there's a further court order.

2           Do you understand that?

3           **MS. STUKENBROCK:**  Yes.

4           **THE COURT:**  All right, and I didn't ask you this at

5   the beginning, but how far did you go through school?

6           **MS. STUKENBROCK:**  I got a master's.

7           **THE COURT:**  All right, and your obligation as a

8   co-signer is going to continue unless there's a court order,

9   all right?

10          **MS. STUKENBROCK:**  I'm sorry, what was that?

11          **THE COURT:**  Unless there's a court order excusing

12  you as the surety, your obligations as a surety will continue

13  until that time.

14          **MS. STUKENBROCK:**  Okay.

15          **THE COURT:**  And he's going to be supervised by the

16  Pretrial Services.  There's an officer here in court that will

17  be working with your father if he's released to make sure he

18  complies with these obligations.  Do you understand that?

19          **MS. STUKENBROCK:**  Um-hum.

20          **THE COURT:**  All right.  Do you have any questions

21  for me about what it means to be a surety and what your

22  obligations are if you co-sign on the release of your father?

23          **MS. STUKENBROCK:**  Um, I guess my only questions

24  would be the amount of time that I would need to come, as I do

25  travel a lot for work, and I am supposed to be relocating for

1  work this year.

2  **THE COURT:**  Moving to a different city, and do you

3  roughly know when that will occur?

4  **MS. STUKENBROCK:**  August 1st.

5  **THE COURT:**  All right.  You don't need to come back

6  to court -- you don't need to come back to court at all once

7  this release order is signed, unless you want to come back

8  yourself to ask for this relationship -- not the

9  relationship -- the order of you being a surety ends.  So you

10  don't have to come back at all.

11       But as the information of August 1st, it's been

12  proposed by the defense that he be released now, and will be a

13  later time that that occurs, and that he can only change where

14  he's living with advance notice to the Court.  So if you, in

15  fact, move down the road and he has to move somewhere, that's

16  something that he'll have to know about and the Court will need

17  to know about too.

18  **MS. STUKENBROCK:**  Um-hum.

19  **THE COURT:**  And one of the conditions of release is

20  that he has to stay within the Northern District of California,

21  that's from Monterey up to the Oregon border, and he can't go

22  outside of that area without permission of the Court.

23  **MS. STUKENBROCK:**  Okay.

24  **THE COURT:**  Any other questions that you have?

25  **MS. STUKENBROCK:**  I don't think so.

1    **THE COURT:**  All right, so my questions about your --

2    to go back to the questions about your assets and income, the

3    reason I have to ask, in trying to fashion a bond that's going

4    to be sufficient, so that he has motivation to come back to

5    court.  So can you tell me what your annual salary is?

6    **MS. STUKENBROCK:**  45,000 a year.

7    **THE COURT:**  All right, and can you estimate for me

8    what your -- any assets that you own?  Do you own a home or a

9    car, or any other assets?

10   **MS. STUKENBROCK:**  I do not.

11   **THE COURT:**  All right, and do you rent your

12   residence in Monterey?

13   **MS. STUKENBROCK:**  I do.

14   **THE COURT:**  And what is the monthly -- what's your

15   monthly rent?

16   **MS. STUKENBROCK:**  The monthly rent is $1,300, that

17   I split with another person.

18   **THE COURT:**  All right, and it's been proposed by the

19   defense that your father is going to come live with you, at

20   least for a little while.  Is there space for him to live with

21   you?

22   **MS. STUKENBROCK:**  Yes, we will make a space.

23   **THE COURT:**  All right.  Then let me ask Ms. Rosen,

24   the attorney for the government, if she has any additional

25   inquiries that you think I should be making about Kristina

1  Stukenbrock's availability and qualifications as a co-signer.

2  **MS. ROSEN:**  No, your Honor.  I guess the only issue

3  would be, if the defendant is living with her, what would

4  happen come August.

5  **THE COURT:**  My -- go ahead.

6  **MS. ROSEN:**  Oh, no, and the only other thing I was

7  going to say, which is not so much a concern -- and perhaps you

8  said it, so I apologize if I'm just repeating what you already

9  said -- but I assume Ms. Stukenbrock should be aware that she

10 would be liable for the bond if defendant violated any of the

11 conditions of release --

12 **THE COURT:**  Yes.

13 **MS. ROSEN:**  -- not just non-appearance, but any of

14 the conditions of release.

15 **THE COURT:**  And we will review -- I've hit the high

16 points, but we'll review the release document itself, to make

17 that clear.

18 **MS. ROSEN:**  Thank you.

19 **THE COURT:**  All right, then, any other questions

20 that the government wishes me to propound?

21 **MS. ROSEN:**  No, thank you, your Honor.

22 **THE COURT:**  All right, and Mr. Carlin, anything else

23 you think I should inquire into?

24 **MR. CARLIN:**  No, your Honor, and just for the

25 Court's edification, we did discuss this outside before the

1    hearing, and I explained to Ms. Stukenbrock that she would be

2    liable in the event Mr. Stukenbrock were to violate any

3    condition, whether he were to re-offend or break the law.  So

4    it's not just limited to flight, and I understand your Honor

5    will admonish Ms. Stukenbrock.

6            And again, just to reiterate, it is our intention

7    for Mr. Stukenbrock to impose on his daughter for only as long

8    as it takes him to find his own residence that meets the

9    approval of Pretrial Services.

10           **THE COURT:**  All right, well, here's my suggestion,

11   which is that we release Mr. Stukenbrock on a $100,000

12   unsecured bond co-signed by his daughter Kristina, and that in

13   about 30 days or whenever you're -- sometime around then that

14   you are all available, we revisit the release issues to see if

15   by that time Mr. Stukenbrock has his own place to live, to see

16   if there's any other modifications of release that will be

17   appropriate, whether the bond should be increased or decreased,

18   and also at that time the Court will have some more information

19   about his financial situation that I lack right now.  So I'm

20   using $100,000 based on information I have available, which is

21   not (audio noise) information, but it's something, and weighing

22   heavily in my determination is that there's no assertion by the

23   government and nothing on the record that would indicate

24   Mr. Stukenbrock is a danger to the community.  So if it were a

25   different circumstance and I had some concerns that there was

1    going to be harm caused to someone, I would not be releasing

2    him without knowing much more information.

3            So unless there's any further argument, if we can

4    get that bond going, and we will advise Mr. Stukenbrock of all

5    the details, do the parties have a copy of...?

6                    (Indistinct colloquy.)

7            **MR. CARLIN:**  Oh, okay....  All right.

8            **THE COURT:**  So why don't you start working on that.

9    We've got just one other case to call, which I think will be a

10   quick one --

11           **MR. CARLIN:**  I'll do that, your Honor.

12           **THE COURT:**  -- then we'll finish off in a few

13   moments.

14           **MS. ROSEN:**  Thank you.

15           **THE COURT:**  Thank you.

16           **MR. CARLIN:**  Is Ms. Stukenbrock free to leave the

17   podium, your Honor?

18           **THE COURT:**  She's free to leave the podium, but

19   stick around so we can finish the signatures.

20           **MR. CARLIN:**  Yes, yes, obviously.  Thank you, your

21   Honor.

22           **THE COURT:**  You can take a minute, thank you.

23           Mr. Stukenbrock, we'll call you back in a minute.

24           (Matter in recess from 2:05 p.m. to 2:12 p.m.)

25           **THE CLERK:**  Recalling criminal 15-0034, United

1   States versus Christian Stukenbrock.

2      **MS. ROSEN:**  Good afternoon again, your Honor.  Amber

3   Rosen for the United States.

4      **THE COURT:**  Welcome back.

5      **MR. CARLIN:**  And again, your Honor, Robert Carlin

6   with Mr. Stukenbrock, who is back in the court before your

7   Honor.

8      I think that we've checked off the right boxes and

9   we're ready to execute the bond.

10      **THE COURT:**  Very well.  If you can bring up Kristina

11   Stukenbrock for her signature and final advisement.

12      **MR. CARLIN:**  Thank you, your Honor.  And just for

13   the record, your Honor, the passport, we ticked the box that --

14   for surrender of the passport.  The passport was already taken

15   by the FBI.

16      **THE COURT:**  Very well, and if you can pass me up the

17   form, there, I will review it.

18      **MR. CARLIN:**  Okay, and we are ready to sign when the

19   Court is ready.

20      **THE COURT:**  Thank you.  And the agency that -- the

21   passport is in FBI hands?

22      **MR. CARLIN:**  I believe it was the FBI -- was it the

23   FBI?

24      **MS. ROSEN:**  Your Honor, I don't know, actually.

25   I can check with the FBI agent and see if she -- but I don't

```
1    actually know that offhand.
2              MR. CARLIN:  And I believe -- I've -- certainly
3    that's what we relayed to Pretrial Services, your Honor, so
4    I don't know where the source of the information in Pretrial
5    Services' report --
6              THE COURT:  It was Agent Whitchurch (phonetic) from
7    the FBI indicated that that was true, so --
8              MS. ROSEN:  Oh, okay.
9              MR. CARLIN:  Yes.
10             THE COURT:  -- that's good enough for me.
11             MS. ROSEN:  Yes.  Me too, then.  Thank you, your
12   Honor.
13             THE COURT:  All right, and there's a place on here
14   to mark for our next court date, so let's set that now.  What
15   date would you like before Judge Davila?
16             MR. CARLIN:  Two weeks, three weeks?
17             MS. ROSEN:  His next calendar is fine, your Honor.
18             THE CLERK:  Judge Davila's clerk is asking the
19   matters to be set June 1st and beyond.
20             MS. ROSEN:  June 1st is fine.
21             MR. CARLIN:  June the 1st would be a good date for
22   me if that's agreeable to Ms. Rosen, your Honor.
23             THE COURT:  All right, we'll set it June 1st at
24   1:30.
25             THE CLERK:  That's correct, your Honor.
```

1      **MR. CARLIN:**  And did your Honor want to set now a

2  kind of a status on the bond issue?

3      **THE COURT:**  You know, we could use that same date,

4  if Judge Davila will coordinate with us to make a quick one

5  here and then go there.

6      **MR. CARLIN:**  That would be fine, Judge.

7      **THE COURT:**  That would be more efficient, probably.

8      **MS. ROSEN:**  Sure.

9      **THE COURT:**  All right, so -- and if it turns out

10  that nothing has changed and you don't want anything to change,

11  you can just indicate to me jointly before that date that

12  there's no reason to come here.

13      **MR. CARLIN:**  Thank you.

14      **MS. ROSEN:**  Sure, your Honor.  I thought I would

15  just -- I know you've made your ruling, but I did need to tell

16  you this, and I apologize for not raising it earlier and, you

17  know, take it for what you think it's worth, but Mr. Carlin

18  made reference to the civil case, and that occurred here, and

19  there was a civil case, and I just wanted to make your Honor

20  aware that the Superior Court judge who was here in Santa Clara

21  County did find that Mr. Stukenbrock was the least credible

22  witness she had ever seen in her entire experience on the

23  bench.

24      **THE COURT:**  And that was based on observing, what?

25  What was the information that that comment was directed from?

1    **MS. ROSEN:**  Yes, that was based on his testimony,

2    deposition testimony, the way that he conducted himself during

3    the trial.

4            **THE COURT:**  And which judge was that?

5            **MS. ROSEN:**  I can't remember her name offhand, your

6    Honor, but I could get that for you, if you need it.

7            **THE COURT:**  All right, in part, that's important for

8    Kristina Stukenbrock to know in evaluating whether she wants to

9    sign this document.

10           **MS. ROSEN:**  Yes, thank you, your Honor.

11           **THE COURT:**  I also want to inform her, because she

12   was not here at the last court date, just to make sure that she

13   knew that Mr. Stukenbrock is charged in multiple counts for

14   wire fraud, and the maximum penalties, if convicted of those

15   charges, are 20 years in prison, a $250,000 fine or twice the

16   gain or loss from the offense, three years of supervised

17   release and a $100 special assessment for each count of

18   conviction.  He's presumed innocent of those charges and has

19   entered a not guilty plea.

20           All right.  So these are the conditions of release

21   that have been proposed and that I'm prepared to order:

22           That Mr. Stukenbrock be released on a $100,000

23   unsecured bond, co-signed by his daughter Kristina Stukenbrock.

24   He must appear at all future court proceedings and, if

25   sentenced, surrender to serve any sentence imposed.  He may not

commit any federal, state or local crime.  He may not harass, threaten, intimidate, injure, tamper with or retaliate against any witness, victim, judge or juror, and he must not obstruct any criminal investigation.

His travel is restricted to the Northern District of California.  Those are the counties from Monterey up to the Oregon border, along the coast.

He will report to the Pretrial Services department upon release, and thereafter be supervised by the Pretrial Services office.

It's been represented that he has surrendered his passport to the FBI; it's in their custody.  He may not apply for a passport or other documentation of travel outside the United States.

Finally, he may not change his residence without the advance approval of Pretrial Services.

The next court dates are on June 1st at 1:30 p.m., both here and in front of Judge Davila.  The appearance here will be to further assess these conditions of release and to see if they should be modified in any way.

Mr. Stukenbrock, do you understand the conditions of release?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  And do you agree to follow them?

**THE DEFENDANT:**  Yes.

| | |
|---|---|
| 1 | **THE COURT:** All right. Kristina Stukenbrock, do you |
| 2 | understand what it means to be a surety, up to the amount of |
| 3 | $100,000? |
| 4 | **MS. STUKENBROCK:** Yes. |
| 5 | **THE COURT:** And do you agree to be a surety for your |
| 6 | father up to that amount? |
| 7 | **MS. STUKENBROCK:** Yes. |
| 8 | **THE COURT:** All right, then I will pass this back to |
| 9 | you for your signatures, and the marshals will get a copy of |
| 10 | it, as well. |
| 11 | **MR. CARLIN:** Does your Honor want the boxes |
| 12 | initialed too, or just signatures? |
| 13 | **THE COURT:** You don't need to initial the boxes. |
| 14 | **MR. CARLIN:** Okay, thank you, your Honor. |
| 15 | (Indistinct colloquy.) |
| 16 | **MR. CARLIN:** Thank you, your Honor. |
| 17 | **THE COURT:** Is there any exclusion of time request |
| 18 | until June the 1st? |
| 19 | **MR. CARLIN:** We haven't any objection. We have -- |
| 20 | Ms. Rosen's working on putting discovery together for us, so at |
| 21 | this point, I think it would be appropriate, your Honor. |
| 22 | **THE COURT:** Is that the government's motion? |
| 23 | **MS. ROSEN:** Okay. Sure. |
| 24 | **THE COURT:** All right. We will exclude time from |
| 25 | now until June 1st for the effective preparation of counsel, |

1    with the proffer that there's discovery to come.

2              **MR. CARLIN:**  Thank you, your Honor.

3              **THE COURT:**  Anything further today?

4              **MS. ROSEN:**  No, thank you.

5              **MR. CARLIN:**  No, your Honor.  Thank you very much.

6              **THE COURT:**  Thanks very much.  Good luck.

7              **THE CLERK:**  Court's in recess.

8                                                    2:19 p.m.

9                           ---o0o---

1

2

3                          **CERTIFICATE OF TRANSCRIBER**

4

5              I, Leo Mankiewicz, certify that the foregoing is a

6      true and correct transcript, to the best of my ability, of the

7      above pages of the official electronic sound recording provided

8      to me by the U.S. District Court, Northern District of

9      California, of the proceedings taken on the date and time

10     previously stated in the above matter.

11             I further certify that I am neither counsel for,

12     related to, nor employed by any of the parties to the action in

13     which this hearing was taken; and, further, that I am not

14     financially nor otherwise interested in the outcome of the

15     action.

16

17                                                    01/04/2019

18              Signature of Transcriber          Date

19

20

21

22

23

24

25